UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAVID LEVOYD REED,<br><br>　　　　　　　　　Plaintiff,<br>　v.<br>JAMES DZURENDA, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 2:19-cv-00172-ART-NJK<br><br>ORDER |

　　　　Plaintiff David Levoyd Reed, proceeding *pro se*, brings this action for excessive use of force and for First Amendment retaliation against Defendant Officer Ted Nielson of High Desert State Prison ("HDSP"). (ECF Nos. 7, 8.) Before the Court are: (1) Plaintiff's motion in limine to exclude evidence regarding disciplinary history ("first motion in limine") (ECF No. 69); (2) Plaintiff's motion in limine to exclude evidence regarding convictions ("second motion in limine") (ECF No. 70); (3); Officer Nielson's motion for summary judgment (ECF No. 75); and (4) Officer Nielson's motion for leave to file declaration in camera and under seal (ECF No. 76). For the reasons set forth in this order, the Court denies Plaintiff's motions in limine without prejudice as premature, grants Officer Nielson's motion for leave to file under seal as unopposed, and grants in part and denies in part Officer Nielson's motion for summary judgment.

**I.　　AMENDED COMPLAINT**

　　　　Plaintiff filed his Complaint, along with an Application for Leave to Proceed *In Forma Pauperis*, with the Court on January 28, 2019, and his Amended Complaint on July 10, 2019. (ECF Nos. 1, 7.) Plaintiff brought claims for Eighth Amendment excessive force and deliberate indifference to serious medical needs, Fourteenth Amendment due process, First Amendment retaliation, conspiracy under 42 U.S.C. § 1985(3), state law criminal statutes, intentional infliction of

1

emotional distress, negligence, and under the Nevada Tort Claim Act, against Nevada Department of Corrections ("NDOC") Director James Dzurenda, Officer Nielson, Associate Warden Jennifer Nash, a Doe nurse, a Doe transportation correctional officer "K", and the HDSP Inspector General. (ECF No. 7 ("Amended Complaint").) The Court issued a screening order on November 18, 2019, which allowed Plaintiff's excessive force claim to proceed against Officer Nielson and the Doe officer and Plaintiff's First Amendment retaliation claim to proceed against Officer Nielson. (ECF No. 8 at 11-12.)

According to the Amended Complaint, on December 6, 2017, after attending court, Plaintiff was standing in the Clark County Detention Center's court holding rotunda. (Amended Complaint at 5.) He was shackled and speaking calmly with Officer Zuniga when Officer Nielson came from behind and tackled Plaintiff. (*Id.*) Nielson allegedly repeatedly slammed Plaintiff's head into the concrete while Officer John "K" Doe held Plaintiff's legs. (*Id.*) Plaintiff then returned to HDSP where he met with Nurse John Doe, who asked Plaintiff what had happened. (*Id.* at 6.) Plaintiff told Nurse Doe about the incident, and Nurse Doe asked whether he was attacked by an NDOC employee or a Clark County Detention Center employee. (*Id.*) Plaintiff alleges that Nurse Doe failed to treat Plaintiff's ankles, which had cuts from his shackles, and did not treat Plaintiff for a concussion. (*Id.*)

Plaintiff states that the next day, December 7, 2017, he was directed to return to work despite his injuries and having submitted grievances regarding Officer Nielson's use of force, which allowed Officer Nielson to subject Plaintiff to retaliation. (*Id.* at 7.) Officer Nielson attempted to place shackles on Plaintiff and Plaintiff refused, asking "so you can slam my head into the concrete again?" (*Id.*) While several other inmates were around, Officer Nielson yelled back, "like you did that 86-year-old lady." (*Id.*) Plaintiff alleges that his safety was put in jeopardy because immediately another inmate assumed that Plaintiff was a protective

custody inmate. (*Id.*)

## II.  MOTION FOR SUMMARY JUDGMENT

Defendant Officer Nielson brought a motion for summary judgment on February 9, 2022. (ECF No. 75.) Regarding Plaintiff's excessive force claim, Officer Nielson argues that the force he applied was necessary and not excessive and that he is entitled to qualified immunity. He states that on December 6, 2017, after Plaintiff's court hearing, Officer Nielson and his partner, Officer Christopher Zuniga, went to retrieve Plaintiff. (*Id.* at 2.) Officers Nielson and Zuniga were aware that as a result of his hearing, Plaintiff had not been remanded to the Clark County Detention Center but rather would be returning to HDSP. (*Id.*) When Officer Nielson went to the holding cell to retrieve Plaintiff, Plaintiff learned that he was to return to HDSP and, according to Officer Nielson, "began screaming while in the holding cell with several other NDOC inmates." (*Id.* at 3; ECF No. 75-2 at ¶ 3.) When Officer Nielson approached the holding cell, Plaintiff was "standing in the middle of the cell yelling obscenities and making threats that he would not leave[,]" including screaming "you are going to have to fucking drag me out of here!" (ECF No. 75 at 3.)

Officer Nielson states that he then left to inform the court holding sergeant, Sgt. Coleman, of the situation, and when he returned, Plaintiff "stood in the middle of the doorway[,]" and was "verbally disruptive" when complying with Officer Zuniga's instruction to move to another holding cell. (*Id.*) Officer Zuniga left to make a phone call to his and Officer Nielson's supervisor, and meanwhile Plaintiff's cursing increased and became louder and Plaintiff "aggressively balled his hands into fists." (*Id.*) Officer Nielson instructed Plaintiff several times to get on the ground, but Plaintiff allegedly refused to comply. (*Id.*) After Officer Nielson "determined that minimal use of force was appropriate to ensure [Plaintiff] did not harm Officer Nielson or others," Officer Nielson "took hold of [Plaintiff's] left shoulder and left wrist and escorted him to the ground." (*Id.*)

Plaintiff was transported by another team by himself so that he would not be able to disrupt other inmates and risk their safety. (*Id.* at 4.) Even though, according to Officer Nielson, Plaintiff "had no visible signs of injury," Plaintiff reported to Officer Zuniga that he was injured as a result of the force applied by Officer Nielson. (*Id.*) Officer Zuniga contacted medical and Plaintiff was examined by Nurse Fana, who reported that Plaintiff had "no obvious signs of injury" and stated, "no treatment needed at this time." (*Id.*; ECF No. 77 at 4.)

Plaintiff responds first by explaining that he was not ordered back to HDSP in the court proceeding, but rather was ordered into the custody of the Clark County Sheriff. (ECF No. 93 at 1-2.) When Plaintiff informed Officer Nielson of this fact, Officer Nielson allegedly responded, "I get paid to take you back to prison." (*Id.* at 2.) Plaintiff stated that he was "not going anywhere because I had [sic] been remanded[,]" and Officer Nielson then responded by stating, "You are giving me permission to put hands on you[.]" (*Id.*) Officer Zuniga ordered all the inmates out of the holding cell and said that they were returning to the prison when Plaintiff calmly explained to Officer Zuniga that he had been remanded to Clark County Detention Center. At that time, "out of nowhere, C/O Nielson from behind tackled me and drug me into holding cell #9, and repeatedly slammed my head into the concrete, while C/O K held my legs." (*Id.*) Plaintiff states that this is supported by a declaration from inmate McMurry Session, who witnessed the incident, but it does not appear that such a declaration was included with Plaintiff's response.

Plaintiff alleges that he had a headache and his ankles were bleeding when he saw medical, and that "[a]pproximately 45 minutes after being examined by the nurse [Plaintiff] became light-headed again and was nautious [sic], and began dry heaving." (*Id.* at 10.) Plaintiff also alleges that NDOC did not act in accordance with A.R. 405.11(1), which requires photographing of all inmates who had forced used upon them, regardless of injury. (*Id.*)

4

Regarding Plaintiff's First Amendment retaliation claim, Officer Nielson argues that his response "like you did to that 84-year-old woman" constituted mere harsh words which are not sufficient to state a claim for retaliation and that Plaintiff has not provided any evidence to support the contention that his safety was jeopardized when other inmates overheard the comment. (ECF No. 75 at 10.) Officer Nielson also argues that he did not make the remark in retaliation for Plaintiff's grievance because Plaintiff did not file a grievance until December 13, 2017, six days after this remark was made. (*Id.* at 10-11.) Officer Nielson also argues that he is entitled to qualified immunity and that Plaintiff failed to exhaust his administrative remedies regarding his retaliation claim since Plaintiff did not file any grievances regarding that claim, and Officer Nielson proffers Plaintiff's NDOC Inmate Grievance Report as evidence. (*Id.* at 12-13; ECF No. 75-4.) Plaintiff does not address the arguments regarding his retaliation claim in his response.

### III.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of informing

the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## IV.   DISCUSSION

Defendant Officer Nielson argues that summary judgment on Plaintiff's excessive force claim is warranted because Plaintiff has not established a genuine issue of material fact as to whether Officer Nielson's use of force was excessive and because the potential violation of Plaintiff's rights by Officer Nielson was not clearly established, thus entitling Officer Nielson to qualified immunity. Officer Nielson argues that summary judgment on Plaintiff's First Amendment retaliation claim is warranted because Plaintiff has not established a genuine issue of material fact as to whether Officer Nielson retaliated against Plaintiff, because Officer Nielson is entitled to qualified immunity, and because Plaintiff failed to exhaust his administrative remedies.

### A.   EXCESSIVE FORCE

Plaintiff's excessive force claim is brought under the Eighth Amendment since the alleged incidents occurred in the prison context. *Hughes v. Rodriguez*, 31 F.4th 1211, 1220 (9th Cir. 2022). In excessive force cases brought under the Eighth Amendment, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Id.* at 1221. The Ninth Circuit applies a five-factor test to determine whether the use of force was malicious and sadistic: (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response. *Id.* Although the extent of any injuries suffered is relevant, a showing of a significant injury is not required for an excessive force claim under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Plaintiff and Defendant Nielson offer competing stories each supported by declarations. On the first factor, the extent of injury suffered, both Plaintiff and Defendant Nielson proffer the medical incident report created on December 6, 2017, which states "No obvious signs of injury" and "No treatment needed at this time." However, Plaintiff states that his ankles were bleeding, that he had a headache, and that he later became light-headed and nauseous and experienced dry heaving. (ECF No. 93 at 10; *see* Amended Complaint at 6 (stating that medical staff failed to treat Plaintiff for a concussion).) Plaintiff also points out that Defendants were required to photograph Plaintiff after the incident involving the use of force pursuant to A.R. 405.11(1), which he provides, and Defendant Nielson does not contest this point. The medical incident report is evidence, but it is contested with proposed testimony, including testimony about the lack of additional medical evidence. There is a genuine issue of material fact as to the extent of Plaintiff's injuries.

The stories set forth by Plaintiff and Defendant Nielson also materially diverge regarding the remaining factors, which relate to the need for the force in light of the circumstances. First, Plaintiff and Defendant Nielson dispute whether Plaintiff was ordered back to HDSP or was remanded into the custody of the Clark County Sheriff. (ECF No. 75 at 2-3; ECF No. 93 at 8-9.) This is relevant to whether Plaintiff was in fact disobeying the orders of Officer Nielson, as Officer Nielson

argues, or whether Plaintiff was being subjected to competing and conflicting directions that he was trying to explain. Defendant Nielson states that Plaintiff was screaming obscenities and had "aggressively balled his hands into fists[,]" while Plaintiff states that he was "calmly explain[ing]" the situation to Officer Zuniga when Officer Nielson "out of nowhere … from behind tackled me[.]" (ECF No. 75 at 3; ECF No. 93 at 9.) These competing facts are relevant to whether there was any need for the force and whether the officers reasonably perceived any threat from Plaintiff. In sum, there are genuine issues of material fact as to Plaintiff's excessive force claim.

Defendant Nielson argues that he is entitled to qualified immunity because any putative violation was not "clearly established." (ECF No. 75 at 12 (citing *Wilkins v. Gaddy*, 559 U.S. at 37–38).) Defendant Nielsen's reliance on *Wilkins* is unavailing because it merely confirms that significant injury is not required for an excessive force claim, and there is clear precedent holding that the unjustified use of force is excessive. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) ("The Court's settled rule is that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). If Plaintiff's version of the events is believed, there was no need for force to be applied against Plaintiff. Defendant Nielson's motion for summary judgment on Plaintiff's excessive force claim is denied.

**B.     RETALIATION**

Within the prison context, a claim of First Amendment retaliation has five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Defendant Officer Nielson

argues that he could not have made the allegedly retaliatory remark regarding Plaintiff because of Plaintiff's protected conduct of filing grievances because Plaintiff did not file any grievance relating to the use of force on December 6, 2017, until December 13, 2017. Officer Nielson cites the exhibit filed by Plaintiff on January 6, 2020 (ECF No. 15), and provides Plaintiff's Inmate Grievance Report (ECF No. 75-4), which affirm that no grievance was submitted by Plaintiff before the remarks were made on December 7, 2017. Plaintiff does not provide any argument or evidence to counter this assertion. There is no genuine issue of material fact as to whether Officer Nielson made the remarks because of Plaintiff's protected conduct. Defendant Nielson's motion for summary judgment on Plaintiff's First Amendment retaliation claim is granted.[1]

## V. MOTIONS IN LIMINE AND MOTION TO FILE UNDER SEAL

On February 3, 2022, Plaintiff filed two motions in limine: a motion in limine to exclude evidence regarding disciplinary history (ECF No. 69); and (2) a motion in limine to exclude evidence regarding convictions (ECF No. 70). Defendant Officer Nielson does not oppose these motions in limine on the merits but rather argues that they are premature since, at that time, the motion for summary judgment had not been decided and the litigation was relatively far from the trial preparation stage. (ECF Nos. 81, 82.) The Court agrees with Officer Nielson. The parties are directed to meet and confer on the issues raised in the motions in limine when the parties confer regarding the joint pretrial order

When Defendant Officer Nielson moved for summary judgment on February 9, 2022, Officer Nielson also moved to file under seal Plaintiff's medical incident report along with a declaration from Jaymie Cabrera, R.N., authenticating the medical incident report. (ECF No. 76.) On October 28, 2022, Plaintiff filed a non-

---

[1] Defendant Nielson also argues that summary judgment on this claim is warranted because Plaintiff did not exhaust his administrative remedies since Plaintiff did not file any grievances regarding this claim. Although the Court need not reach the issue of exhaustion, it appears that Plaintiff did file grievances relating to this claim. (ECF No. 75-4 at 19.)

opposition to Officer Nielson's motion to file under seal. (ECF No. 91.) Officer Nielson's motion to file under seal is therefore granted as unopposed.

## VI. CONCLUSION

Based on the foregoing and in consideration of the record as a whole, the Court denies Defendant Officer Nielson's motion for summary judgment (ECF No. 75) on Plaintiff's excessive force claim and grants Officer Nielson's motion for summary judgment on Plaintiff's First Amendment retaliation claim.

The Court further denies Plaintiff's motions in limine (ECF Nos. 70, 71) without prejudice as premature. The Court directs the parties to meet and confer regarding the issues raised in the motions in limine prior to the filing of a joint pretrial order.

The Court further grants Officer Nielson's motion for leave to file declaration in camera and under seal as unopposed. (ECF No. 76.)

It is so ordered.

DATED THIS 22nd day of December 2022.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE